**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANIEL LAWLER, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>v.<br><br>HUB GROUP, INC., PHILLIP YEAGER, DAVID YEAGER, KEVIN BETH, GEOFFREY DEMARTINO, DENNIS MATHEWS, and BRENT RHODES,<br><br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION**<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Daniel Lawler ("Plaintiff"), by and through his counsel, alleges the following upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based on, among other things, the independent investigation of counsel. This investigation includes, but is not limited to, a review and analysis of: (i) public filings by Hub Group, Inc. ("Hub Group" or the "Company") with the Securities and Exchange Commission ("SEC"); (ii) transcripts of Hub Group's conferences with investors and analysts; (iii) press releases and media reports issued and disseminated by the Company; (iv) analyst reports concerning the Company; and (v) other public information and data regarding the Company.

## NATURE OF THE ACTION

1.  This is a class action on behalf of all persons and entities that purchased or acquired Hub Group securities between April 28, 2023, and May 11, 2026, inclusive (the "Class Period"). Plaintiff asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against: (i) Hub Group; (ii) the Company's Chief Executive Officer ("CEO"), President, and Vice Chairman, Phillip Yeager; (iii) the Company's Executive Chairman and former CEO, David Yeager; (iv) the Company's former Chief Financial Officer ("CFO"), Executive Vice President ("EVP"), and Treasurer, Kevin Beth ("Beth"); (v) the Company's former CFO, EVP, and Treasurer, Geoffrey DeMartino ("DeMartino"); (vi) the Company's Chief Accounting Officer ("CAO") and EVP, Dennis Mathews ("Mathews"); and (vii) the Company's former CAO and EVP, Brent Rhodes ("Rhodes," with Phillip Yeager, David Yeager, Beth, DeMartino, and Mathews, the "Individual Defendants" and, all together with Hub Group, "Defendants").

2. Hub Group is a transportation logistics company that provides trucking services across North America, with more than 50,000 containers for shipping freight and 7 million available square feet of warehousing and cross-dock space for storage and distribution. The Company consists of two primary business segments: (i) Intermodal and Transportation Solutions, which includes trucking operations; and (ii) Logistics, which provides additional supply chain services to customers.

3. This case concerns material misstatements in the Company's publicly filed financial reports with the SEC and other public communications during the Class Period, concerning the premature and incorrect revenue recognition of certain transactions, the understatement of purchased transportation costs and accounts payable, the effectiveness of internal controls, and drivers of financial results and growth.

4. On February 5, 2026, Hub Group announced that the Company's financial statements for the first three quarters of 2025 should not be relied upon due to "an error that resulted in the understatement of purchased transportation costs and accounts payable in the first nine months of 2025." The Company revealed that its reports for those quarters "were in each case materially misstated due to the aforementioned error and should no longer be relied upon" and that "the Company [wa]s also continuing to assess the effectiveness of its disclosure controls and procedures and internal control over financial reporting and appropriate remediation steps." The Company also estimated that "[t]he total amount of the reduction to accounts payable and purchased transportation costs related to this issue that was recorded during these periods is $77 million." As such, Hub Group stated that it "plans to restate its financial statements for the first, second and third quarters of 2025."

5.      On this news, the price of Hub Group stock declined roughly 18%, from $51.33 per share at close on February 5, 2026, to $41.96 per share at close on February 6, 2026.

6.      Then, on May 12, 2026, Hub Group announced that it had "identified certain transactions that were prematurely or incorrectly recognized or not adequately supported," causing its 2023 and 2024 annual reports filed with the SEC to be "materially misstated," such that they "should no longer be relied upon."  The Company did not quantify the expected misstatement, although it "expect[ed] to conclude that it did not maintain effective disclosure controls and procedures and internal control over financial reporting for each of the years ended December 31, 2024 and 2023."

7.      On this news, the price of Hub Group stock declined a further 13%, from $41.86 per share at close on May 11, 2026, to $36.62 per share at close on May 12, 2026.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  The Company's principal offices are located in this District.  Substantial acts in the furtherance of the alleged fraud or the effects of the fraud have occurred in this District and caused harm in this District.  Such acts include the dissemination of false and misleading statements, including into this District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff is Daniel Lawler.  Plaintiff purchased Hub Group securities during the Class Period, as detailed in the Certification attached hereto and incorporated herein, and has been damaged thereby.

13.     Defendant Hub Group is a Delaware corporation with its principal executive offices in Oak Brook, Illinois.  Hub Group's common stock trades on the NASDAQ stock exchange under the ticker symbol "HUBG."

14.     Defendant Phillip Yeager is, and beginning January 1, 2023, was, Hub Group's CEO, President, and Vice Chairman.

15.     Defendant David Yeager is Hub Group's Executive Chairman and was the Company's CEO from March 1995 to December 2022.  He is also the father of Defendant Phillip Yeager.

16.     Defendant Kevin Beth was Hub Group's CFO, EVP, and Treasurer from January 1, 2024, until the announcement of his departure on May 28, 2026, and was previously the Company's CAO and EVP.

17.     Defendant Geoffrey DeMartino was Hub Group's CFO, EVP, and Treasurer until January 1, 2024.

18.     Defendant Dennis Mathews is, and was since June 2025, Hub Group's CAO and EVP.

-5-

19. Defendant Brent Rhodes was, from April 2024 to June 2025, Hub Group's CAO and EVP.

20. The Individual Defendants, because of their positions with the Company, possessed the power and authority to, *inter alia*, control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.

21. Certain of the Individual Defendants were provided with copies of the Company's presentations and SEC filings alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.

22. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts and omissions specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations and omissions which were being made were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### Background

23. Hub Group is a transportation and logistics freight carrier that provides trucking and related services to operators across the supply chain. The Company services a customer base extending across various industries, including retail, consumer products, automotive, and durable goods, and reports to be one of the largest freight transportation providers in North America. The Company consists of two primary business segments: (i) Intermodal and Transportation Solutions, which includes trucking operations; and (ii) Logistics, which provides additional supply chain

services to customers. Although the Company owns many assets through which it provides services to customers including, for example, a fleet of trucks and cargo containers, it also contracts with third-parties in providing access to assets that it does not itself own including, for example, warehouse space.

24. The Company's largest cost by a wide margin is its purchased transportation and warehousing costs, which comprised between 74% and 76% of revenue from 2022-2024 and, in each year, amounted to more than triple all the Company's other reported operating expense line items combined.

**Materially False and Misleading Statements Issued During the Class Period**

25. The Class Period begins on April 28, 2023. The day before, after market hours, Hub Group held an earnings call to discuss the Company's Q1 2023 financial results. During the call, Defendant DeMartino announced that "[d]espite softer freight market conditions, we generated revenue of $1.2 billion for the quarter, which is the second highest first quarter revenue in the history of our company." Defendant Phillip Yeager also stated on that same call that "[w]e will maintain our focus on providing outstanding service and improving our cost structure to drive long-term growth."

26. Hub Group filed its Form 10-Q for Q1 2023 with the SEC on May 5, 2023, which was signed by Defendants DeMartino and Beth and was accompanied by Sarbanes-Oxley ("SOX") certifications from Defendants Phillip Yeager and DeMartino. The Form 10-Q reported operating revenue of $1.15 billion and operating income of $78.2 million for the three months ended March 31, 2023.

27. The Form 10-Q also stated that "[a]s of March 31, 2023, an evaluation was carried out under the supervision and with the participation of our management, including our Chief

Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2023."

28.     Defendants Phillip Yeager and DeMartino's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

29.     On July 27, 2023, after market hours, Hub Group held an earnings call to discuss the Company's Q2 2023 financial results. During the call, Defendant DeMartino announced that "[d]espite softer freight market conditions, we generated revenue of over $1 billion for the quarter and operating income margin of 6%." Defendant Phillip Yeager stated that we "maintain a strong view that we are in a fantastic position to drive growth through our best-in-class service and team, excellent customer relationships, and focused investment approach."

30.     Hub Group filed its Form 10-Q for Q2 2023 with the SEC on August 4, 2023, which was signed by Defendants DeMartino and Beth and was accompanied by SOX certifications from Defendants Phillip Yeager and DeMartino. The Form 10-Q reported operating revenue of $1.04 billion and operating income of $62.1 million for the three months ended June 30, 2023.

31. The Form 10-Q also stated that "[a]s of June 30, 2023, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2023."

32. Defendants Phillip Yeager and DeMartino's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

33. On October 26, 2023, after market hours, Hub Group held an earnings call to discuss the Company's Q3 2023 financial results. During the call, Defendant DeMartino announced that "[d]espite recessionary freight market conditions, we generated revenue of over $1 billion for the quarter and an operating income margin of 4.2%." Defendant Phillip Yeager stated that "we believe Hub Group is extremely well positioned to drive long-term growth and returns through our focus on providing best-in-class service, continuing to operate efficiently and investing in our business through accretive acquisitions and long-term organic growth."

34. Hub Group filed its Form 10-Q for Q3 2023 with the SEC on November 3, 2023, which was signed by Defendants DeMartino and Beth and was accompanied by SOX certifications

from Defendants Phillip Yeager and DeMartino. The Form 10-Q reported operating revenue of $1.02 billion and operating income of $42.6 million for the three months ended September 30, 2023.

35. The Form 10-Q also stated that "[a]s of September 30, 2023, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2023."

36. Defendants Phillip Yeager and DeMartino's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

37. On February 1, 2024, Hub Group announced its Q4 2023 financial results by filing a Form 8-K with the SEC, which was signed by Defendant Beth. Therein, Defendant Phillip Yeager is quoted as saying "[w]e continue to implement key strategic priorities that position us to grow for the long term, while keeping a significant focus on managing our cost structure." The release also reported operating revenue of $985 million and operating income of $29.4 million for the three months ended December 31, 2023.

38. Later that day, after market hours, Hub Group held an earnings call to discuss the Company's Q4 2023 financial results. During the call, Defendant Beth stated that "[d]espite a continuing challenging freight market, Hub generated revenue of $4.2 [b]illion for the year and $1 billion for the quarter" and that "[o]ur GAAP operating income margin for the full year was 5.1% and 3% for the quarter."

39. Hub Group filed its Form 10-K for the full year 2023 with the SEC on February 27, 2024, which was signed by, among others, Defendants Phillip Yeager, David Yeager, and Beth, and was accompanied by SOX certifications from Defendants Phillip Yeager and Beth. The Form 10-K reported operating revenue of $4.2 billion and operating income of $212.2 million for the year ended December 31, 2023.

40. The Form 10-K included a section titled "Revenue Recognition," which discussed how the Company recognizes revenue and the steps the Company takes when recording revenue, including identifying the contract, the performance obligations, and allocating the transaction price to the performance obligations, among other things. In pertinent part, the Company stated:

> In accordance with the Accounting Standards Codification (ASC) topic 606, 'Revenue from Contracts with Customers,' our significant accounting policy for revenue is as follows:
>
> Revenue is recognized when we transfer services to our customers in an amount that reflects the consideration we expect to receive. We account for a contract when it has approval and commitment from both parties, the rights of the parties are identified, payment terms are identified, the contract has commercial substance and collectability of consideration is probable. ***We generally recognize revenue over time because of continuous transfer of control to the customer. Since control is transferred over time, revenue and related transportation costs are recognized based on relative transit time, which is based on the extent of progress towards completion of the related performance obligation*** . . . .

41. Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information

included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-K.

42.     On April 25, 2024, Hub Group announced its Q1 2024 financial results by filing a Form 8-K with the SEC signed by Defendant Beth.  Therein, Defendant Phillip Yeager is quoted as saying "[o]ur yield management, cost containment and operating efficiency initiatives resulted in operating income margin of 3.7% of revenue, an improvement over the fourth quarter."

43.     Later that day, after market hours, Hub Group held an earnings call to discuss the Company's Q1 2024 financial results.  During the call, Defendant Beth stated that "[o]ur reported revenue for the first quarter of $1 billion.  Revenue declined 13% compared to $1.2 billion last year, but was in line with fourth quarter revenue."  Defendant Phillip Yeager stated that "our strong balance sheet and robust pipeline of opportunities positions us to drive growth via strategic acquisitions."

44.     Hub Group filed its Form 10-Q for Q1 2024 with the SEC on May 3, 2024, which was signed by Defendants Beth and Rhodes and was accompanied by SOX certifications from Defendants Phillip Yeager and Beth.  The Form 10-Q reported operating revenue of $999 million and operating income of $37.1 million for the three months ended March 31, 2024.

45.     The Form 10-Q also stated that "[a]s of March 31, 2024, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and

procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2024."

46. Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

47. On August 1, 2024, after market hours, Hub Group held an earnings call to discuss the Company's Q2 2024 financial results. During the call, Defendant Beth "reported revenue for the second quarter of $986 million [which] declined 5% compared to last year . . . ."

48. Hub Group filed its Form 10-Q for Q2 2024 with the SEC on August 2, 2024, which was signed by Defendants Beth and Rhodes and was accompanied by SOX certifications from Defendant Phillip Yeager and Beth. The Form 10-Q reported operating revenue of $986 million and operating income of $39.5 million for the three months ended June 30, 2024.

49. The Form 10-Q also stated that "[a]s of June 30, 2024, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation,

-12-

the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2024."

50. Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

51. On October 30, 2024, after market hours, Hub Group held an earnings call to discuss the Company's Q3 2024 financial results. During the call, Defendant Beth stated that "[f]or the third quarter, Hub reported revenue of $987 million. Revenue declined 3.7% compared to last year and was comparable to second quarter revenue of $986 million." Defendant Phillip Yeager stated that "[w]e are in a great position as an organization to drive significant growth in revenue and earnings ahead as we execute on our strategy and are supported by a market recovery."

52. Hub Group filed its Form 10-Q for Q3 2024 with the SEC on November 1, 2024, which was signed by Defendants Beth and Rhodes and was accompanied by SOX certifications from Defendants Phillip Yeager and Beth. The Form 10-Q reported operating revenue of $987 million and operating income of $32.1 million for the three months ended September 30, 2024.

53. The Form 10-Q also stated that "[a]s of September 30, 2024, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls

-13-

and procedures (as such term is defined in Exchange Act Rule 13a-15(e)).  Based upon this evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2024."

54.     Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

55.     On February 6, 2025, Hub Group announced its Q4 2024 financial results by filing a Form 8-K with the SEC signed by Defendant Beth.  Therein, Defendant Phillip Yeager is quoted as saying "[w]e continue to implement our key strategic priorities that position us for growth in the long term.  We are excited to continue the momentum and deliver for our customers and shareholders in 2025."  The release also reported operating revenue of $973 million and operating income of $31.5 million for the three months ended December 31, 2024.

56.     Later that day, after market hours, Hub Group held an earnings call to discuss the Company's Q4 2024 financial results.  During the call, Defendant Beth stated that "Hub generated revenue of $4 billion a 6% decrease over prior year.  For the fourth quarter, Hub reported revenue of $1 billion, a decline of 1% over last year's quarterly revenue."  Defendant Phillip Yeager also stated that "[the] trends and the actions we have taken to improve our cost structure, maintain

-14-

excellent service levels and improve growth across all of our offerings, we believe, will lead to improved revenue and earnings in 2025."

57. Hub Group filed its Form 10-K for the full year 2024 with the SEC on February 25, 2025, which was signed by, among others, Defendants Phillip Yeager, David Yeager, and Beth, and was accompanied by SOX certifications from Defendants Phillip Yeager and Beth. The Form 10-K reported the Company's operating revenue of $3.95 billion and operating income of $140.3 million for the year ended December 31, 2024.

58. The Form 10-K included a section titled "Revenue Recognition," which discussed how the Company recognizes revenue and the steps the Company takes when recording revenue, including identifying the contract, the performance obligations, and allocating the transaction price to the performance obligations, among other things. In pertinent part, the Company stated:

> In accordance with the Accounting Standards Codification (ASC) topic 606, 'Revenue from Contracts with Customers,' our significant accounting policy for revenue is as follows:
>
> Revenue is recognized when we transfer services to our customers in an amount that reflects the consideration we expect to receive. We account for a contract when it has approval and commitment from both parties, the rights of the parties are identified, payment terms are identified, the contract has commercial substance and collectability of consideration is probable. ***We generally recognize revenue over time because of continuous transfer of control to the customer. Since control is transferred over time, revenue and related transportation costs are recognized based on relative transit time, which is based on the extent of progress towards completion of the related performance obligation*** . . . .

59. Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and

procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-K.

60. On May 8, 2025, after market hours, Hub Group held an earnings call to discuss the Company's Q1 2025 financial results. During the call, Defendant Beth stated that "for the quarter, purchased transportation and warehousing costs were $658 million, a decrease of $82 million from the prior year due to strong cost controls as well as lower rail and warehouse expenses. This results in a 220 basis point improvement on a percent of revenue basis when compared to Q1 of 2024." Defendant Phillip Yeager stated that "[w]e are focused on growth across all of our offerings and improving our cost basis through productivity enhancements, and we have a strong pipeline as we leverage our scale and service to compete and win in the market."

61. Hub Group filed its Form 10-Q for Q1 2025 with the SEC on May 9, 2025, which was signed by Defendants Beth and Rhodes and was accompanied by SOX certifications from Defendant Phillip Yeager and Beth. The Form 10-Q reported operating expenses of $877.9 million, including purchased transportation and warehousing expenses of $657.9 million, for the three months ended March 31, 2025.

62. The Form 10-Q also reported that "[p]urchased transportation and warehousing costs decreased 11% to $658 million in 2025 from $740 million in 2024. As a percentage of revenue, purchased transportation and warehousing costs decreased to 71.9% in 2025 from 74.1% in 2024 . . . due to lower rail and third-party warehouse costs. The reduction in warehouse costs is primarily driven by the completion of our network optimization project in 2024."

63. The Form 10-Q further stated that "[a]s of March 31, 2025, an evaluation was carried out under the supervision and with the participation of our management, including our

Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2025."

64. Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

65. On July 31, 2025, after market hours, Hub Group held an earnings call to discuss the Company's Q2 2025 financial results. During the call, Defendant Beth stated that "for the quarter, purchased transportation and warehousing costs were $656 million, a decrease of $71 million from the prior year due to strong cost controls as well as lower rail and warehouse expenses. This resulted in a 130 basis point improvement on a percent of revenue basis when compared to Q2 of 2024." Defendant Phillip Yeager stated that "we believe that Hub Group is positioned for growth in both the current environment as well as with a combined transcontinental partner due to our scale, flexible model, service, customer relationships and rail partnerships."

66. Hub Group filed its Form 10-Q for Q2 2025 with the SEC on August 6, 2025, which was signed by Defendants Beth and Mathews and was accompanied by SOX certifications from Defendants Phillip Yeager and Beth. The Form 10-Q reported operating expenses of $871.3

million, including purchased transportation and warehousing expenses of $655.9 million, for the three months ended June 30, 2025.

67.     The Form 10-Q also reported that "[p]urchased transportation and warehousing costs decreased 10% to $656 million in 2025 from $727 million in 2024.  As a percentage of revenue, purchased transportation and warehousing costs decreased to 72.4% in 2025 from 73.7% in 2024 . . . due to rail cost decreases, lower third-party drayage and warehousing costs, and lower fuel costs."

68.     The Form 10-Q further stated that "[a]s of June 30, 2025, an evaluation was carried out under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)).  Based upon this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2025."

69.     Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

70.     On October 30, 2025, after market hours, Hub Group held an earnings call to discuss the Company's Q3 2025 financial results.  During the call, Defendant Beth stated that

"[f]or the quarter, purchase transportation and warehousing costs were $684 million, a decrease of $56 million from prior year due to strong cost controls as well as lower rail and warehouse expenses. This resulted in a 180-basis point improvement on a percent of revenue basis when compared to Q3 of 2024." Defendant Phillip Yeager stated that "[w]e are actively reallocating assets in preparation for growth with new and existing customers and believe that our high-end service capabilities, geographic density and dynamic model position us well for growth in the current market and the shifts in capacity occur."

71. Hub Group filed its Form 10-Q for Q3 2025 with the SEC on November 5, 2025, which was signed by Defendants Beth and Mathews and was accompanied by SOX certifications from Defendants Phillip Yeager and Beth. The Form 10-Q reported operating expenses of $895.1 million, including purchased transportation and warehousing expenses of $683.7 million, for the three months ended September 30, 2025.

72. The Form 10-Q also reported that "[p]urchased transportation and warehousing costs decreased 8% to $684 million in 2025 from $740 million in 2024 . . . due to rail cost decreases and lower third-party carrier costs as we have purchased third party transportation more effectively. Additionally, our warehouse costs have decreased after the completion of our warehouse space consolidation efforts as part of our Network Alignment Initiative in 2024."

73. The Form 10-Q further stated that "[a]s of September 30, 2025, an evaluation was carried out under the supervision and with the participation of our management, including the Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Exchange Act Rule 13a-15(e)). Based upon this evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2025."

74. Defendants Phillip Yeager and Beth's accompanying SOX certifications each stated that "[b]ased on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" and that they were "responsible for establishing[, evaluating,] and maintaining disclosure controls and procedures . . . to ensure that material information relating to the registrant . . . [wa]s made known [to them] . . . [and] to provide reasonable assurance regarding the reliability of financial reporting" for the Form 10-Q.

75. The statements referenced in ¶¶25-59 were materially false and misleading as the Company's financial statements prepared for the periods from Q1 2023 to Q4 2024, including annual reports for 2023 and 2024, contained material misstatements—caused by the premature and incorrect recognition of certain transactions—concerning, *inter alia*, the Company's operating revenue, operating income, revenue recognition, effectiveness of internal controls and procedures, and drivers of financial results and growth. The statements referenced in ¶¶60-74 were materially false and misleading as the Company's financial statements prepared for the periods from Q1 2025 to Q3 2025 contained material misstatements—caused by the understatement of purchased transportation costs and accounts payable —concerning, *inter alia*, the Company's operating expenses, purchased transportation and warehousing expenses, operating income, effectiveness of internal disclosure controls and procedures, and drivers of financial results and growth.

**The Truth Is Revealed**

76. On February 5, 2026, Hub Group announced "that it will restate its financial statements for the first, second and third quarters of 2025" due to "an error that resulted in the understatement of purchased transportation costs and accounts payable in the first nine months of

2025." The Company stated that its reports for those quarters "were in each case materially misstated due to the aforementioned error and should no longer be relied upon" and that "the Company [wa]s also continuing to assess the effectiveness of its disclosure controls and procedures and internal control over financial reporting and appropriate remediation steps." The Company estimated that "[t]he total amount of the reduction to accounts payable and purchased transportation costs related to this issue that was recorded during these periods is $77 million."

77. On this news, the price of Hub Group stock declined roughly 18%, from $51.33 per share at close on February 5, 2026, to $41.96 per share at close on February 6, 2026.

78. Then, on May 12, 2026, Hub Group further announced that it had "identified certain transactions that were prematurely or incorrectly recognized or not adequately supported," rendering its 2023 and 2024 financial reports to be materially misstated such that they "should no longer be relied upon." The Company did not quantify the expected misstatement, although it "expect[ed] to conclude that it did not maintain effective disclosure controls and procedures and internal control over financial reporting for each of the years ended December 31, 2024 and 2023."

79. On this news, the price of Hub Group stock declined a further 13%, from $41.86 per share at close on May 11, 2026, to $36.62 per share at close on May 12, 2026.

## LOSS CAUSATION

80. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Hub Group securities and operated as a fraud or deceit on the Class. Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on February 5, 2026 and May 12, 2026, as alleged herein, the price of Hub Group securities fell precipitously, as the prior artificial inflation came out of the price. As a result of their

-21-

purchases of Hub Group securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## ADDITIONAL SCIENTER ALLEGATIONS

81.     As alleged herein, the Individual Defendants acted with scienter because they knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Hub Group, their control over, and/or receipt and/or modification of Hub Group's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Hub Group, participated in the fraudulent scheme alleged herein.

82.     With respect to 2023 and 2024, the Individual Defendants made false and misleading statements and omitted material information by prematurely and improperly recognizing and accounting for certain transactions and failing to maintain adequate internal controls.  With respect to 2025, the Individual Defendants made false and misleading statements and omitted material information concerning Hub Group's largest and most significant operating expense line item.  Purchased transportation and warehousing costs accounted for between 74-76% of the Company's revenue during the Class Period.  Moreover, the Individual Defendants chose to discuss these costs—and repeatedly stated that they had decreased on a year-over-year

basis—during earnings calls in 2025. By publicly commenting on these subjects, the Individual Defendants held themselves out as knowledgeable about them.

83. Moreover, many of the Individual Defendants either signed or certified (under SOX) the materially false and misleading reports filed with the SEC during the Class Period. Defendant Phillip Yeager certified the accuracy of every one of Hub Group's false and misleading quarterly and annual reports during the Class Period and signed each annual report. Defendant David Yeager also signed each annual report. Defendant Beth signed every quarterly and annual report during the Class Period (first as CAO then as CFO) and also certified each after assuming the role of CFO on January 1, 2024. Defendant DeMartino signed and certified each quarterly and annual report during the Class Period prior to Defendant Beth's assumption of the CFO role. Defendant Rhodes signed each quarterly and annual report during his tenure as CAO and Defendant Mathews signed each one thereafter.

84. The sudden departures of two of the Company's top executives—Defendant Beth and the Company's former Chief Operating Officer Meents—shortly after the announcements that prior reporting periods were materially misstated also supports an inference of scienter. Hub Group's Audit Committee Chair tied the executive departures to the material misstatements, stating on May 28, 2026 that, "[i]n connection with the review conducted under the direction of the Audit Committee, we are taking corrective actions, including enhancing our financial reporting processes and making changes to the Company's leadership team."

85. Moreover, the Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Hub Group securities by disseminating materially false and misleading statements or concealing material adverse facts. The scheme deceived the investing public regarding Hub Group's business,

-23-

operations, and management and the intrinsic value of Hub Group securities and caused Plaintiff and members of the Class to purchase Hub Group securities at artificially inflated prices.

86.     As alleged above, the Individual Defendants acted with scienter, had actual and apparent authority over Hub Group, and acted within the scope of their apparent authority in making the misstatements at issue.  Their scienter is imputed to the Company.

## CLASS ACTION ALLEGATIONS

87.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Hub Group securities during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, as well as officers of Hub Group and their families and affiliates.

88.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of October 29, 2025, Hub Group had 60,578,607 shares of Class A common stock outstanding and 574,903 shares of Class B common stock outstanding.

89.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    A.  Whether Defendants violated the Exchange Act;

    B.  Whether Defendants omitted and/or misrepresented material facts;

    C.  Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

D. Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

E. Whether the price of Hub Group's securities was artificially inflated;

F. Whether Defendants' conduct caused the members of the Class to sustain damages; and

G. The extent of damage sustained by Class members and the appropriate measure of damages.

90. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

91. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

92. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

93. Hub Group's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective and inapplicable and cannot shield the statements at issue from liability. The statements alleged to be false and misleading above relate to then-existing facts and conditions.

94. To the extent there were any forward-looking statements, they were not sufficiently identified as such at the time they were made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

95.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was made by or authorized and/or approved by an executive officer of Hub Group who knew that the statement was false.

**PRESUMPTION OF RELIANCE**

96.     At all relevant times, the market for Hub Group's securities was an efficient market for the following reasons, among others:

   A.  The Company's shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

   B.  As a regulated issuer, Hub Group filed periodic public reports with the SEC;

   C.  Hub Group regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

   D.  Hub Group was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

97.     As a result of the foregoing, the market for Hub Group securities promptly digested current information regarding Hub Group from all publicly available sources and reflected such information in the price.  Under these circumstances, all purchasers of Hub Group securities during

-26-

the Class Period suffered similar injury through their purchase of Hub Group securities at artificially inflated prices and the presumption of reliance applies.

98. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.

## COUNT I

**For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

99. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

100. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Hub Group securities at artificially inflated prices.

101. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Hub Group securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

102. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Hub Group's business and revenue prospects, as specified herein.

103. During the Class Period, Defendants made the false statements specified above which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

104. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal the truth about the Company's business and revenue prospects, as specified herein, from the investing public and to support the artificially inflated prices of the Company's securities.

105. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Hub Group's securities. Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices had been artificially inflated by Defendants' fraudulent course of conduct.

106. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

107. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

108. Plaintiff repeats, incorporates, and re-alleges each and every allegation set forth above as if fully set forth herein.

-28-

109. The Individual Defendants acted as controlling persons of Hub Group within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Hub Group, the Individual Defendants had the power and ability to control the actions of Hub Group and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

110. **WHEREFORE**, Plaintiff prays for judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## **JURY DEMAND**

111. Plaintiff demands a jury trial.

Dated: June 29, 2026          Respectfully submitted,

**BURKE BURNS & PINELLI, LTD.**

*/s/ Sarah A. Boeckman*
Mary Patricia Burns
Sarah A. Boeckman
70 West Madison Street
Suite 4300
Chicago, Illinois 60602
Tel: (312)541-8600
Fax:(312)541-8603
mburns@bbp-chicago.com
sboeckman@bbp-chicago.com

*Local Counsel for Plaintiff Daniel Lawler*

**BLEICHMAR FONTI & AULD LLP**

Javier Bleichmar (*pro hac vice* forthcoming)
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz (*pro hac vice* forthcoming)
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

-and-

Adam C. McCall (*pro hac vice* forthcoming)
15301 Ventura Boulevard, Suite U1
Sherman Oaks, California 91403
Telephone: (415) 445-4003
Facsimile: (212) 205-3960
amccall@bfalaw.com

*Counsel for Plaintiff Daniel Lawler*

-30-

## CERTIFICATION

I, Daniel Lawler, hereby certify as follows:

1.      I have reviewed the class action complaint against Hub Group, Inc. ("Hub Group") and others alleging violations of the federal securities laws and have authorized its filing.

2.      I did not purchase or sell securities of Hub Group at the direction of counsel, or in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the Class in this matter, including providing testimony at deposition and trial, if necessary.

4.      My transactions in the Hub Group securities that are the subject of this litigation during the Class Period are reflected in Schedule A, attached hereto.

5.      Other than in the instant action, I have not sought to serve as a representative party in a class action filed under the federal securities laws in the last three years.

6.      Beyond my *pro rata* share of any recovery, I will not accept payment for serving as a representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses including lost wages as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Dated: 6/27/2026

Signed by:

*Daniel Lawler*

B2AE605FA45B444...

Daniel Lawler

1

**SCHEDULE A**

TRANSACTIONS IN

HUB GROUP, INC.

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchase | 01/07/2026 | 893.00 | 44.91 | ($40,104.54) |
| Sale | 02/12/2026 | -893.00 | 37.85 | $33,800.05 |

Page 1 of 1